**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

DEMETRIUS THOMAS,

                           Plaintiff,

        - against -

COUNCIL OF STATE GOVERNMENTS JUSTICE
CENTER,

                     Defendant.

---------------------------------------------------------------------X

**Case No.**

**COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

      DEMETRIUS THOMAS ("Plaintiff"), by and through his attorneys, PHILLIPS &

ASSOCIATES, PLLC, and THE WASHINGTON LAW FIRM, PLLC against COUNCIL OF

STATE GOVERNMENTS JUSTICE CENTER, ("Defendant"), alleges upon knowledge as to

himself and his own actions and upon information and belief as to all other matters as follows:

### NATURE OF THE CASE

1.      Plaintiff complains pursuant to the discrimination and retaliation provisions of (i) **Title VII of**

**the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII");  (ii)

**Section 1981 of the Civil Rights Act of 1866,** 42 U.S.C. § 1981 ("Section 1981"); (iii) the

**New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.*

("NYSHRL"); (iv) the **New York City Human Rights Law,** New York City Administrative

Code § 8-107(1), et seq. ("NYCHRL"), and any other claim(s) that can be inferred from the

facts set forth herein and seeks damages to redress the injuries Plaintiff suffered as a result of

being discriminated against and retaliated against by Defendant on the **basis of Plaintiff's race**

**(African American)** and **sexual orientation.**

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. §12101, et seq., and 28 U.S.C. §§ 1331

and 1343.

3.    The Court has supplemental jurisdiction over Plaintiff's state and county claims pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this district in that the events or omissions giving rise to the claims occurred within the Southern District of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.    Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

6.    Plaintiff received a Notice of Right to Sue from the EEOC dated December 15, 2022, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7.    This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

8.    Prior to the commencement of this action, Plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York on January 5, 2023, in accordance with the New York City Administrative Code §8-502(c).

## PARTIES

9.    At all times material, Plaintiff was and is a homosexual African American male, and a resident of the State of New York.

10.    At all times material, Plaintiff was and is a "person" and an "employee" of Defendant and entitled to protection as defined by TITLE VII, Section 1981, NYSHRL, and NYCHRL.

11.    At all times material, COUNCIL OF STATE GOVERNMENTS JUSTICE CENTER, ("Defendant") was and is a national, nonprofit, nonpartisan organization headquartered in

Lexington, Kentucky.

12.     At all times material, Plaintiff was employed in Defendant's New York location located at 22 Cortlandt Street, 22nd Floor, New York, NY 10007.

13.     At all times material, Plaintiff was employed by Defendant.

14.     At all times material, Defendant was an "employer" under TITLE VII, Section 1981, NYSHRL, and NYCHRL.

15.     At all times material, Defendant employed over 25 employees.

## MATERIAL FACTS

16.     In or about July 2020, Plaintiff began working for Defendant as a full-time Deputy Program Director in the Behavioral Health Division earning approximately $118,000.

17.     At all times material, Plaintiff was qualified for his position given his extensive experience and education. Indeed, Plaintiff received his bachelor's degree with a dual concentration in international and United States politics, from Columbia University and his Juris Doctorate from the University of the District of Columbia David A. Clarke School of Law.

18.     At all times material, Plaintiff worked under the supervision of Supervisor Ayesha Delany-Brumsey ("Ms. Delany-Brumsey").

19.     At all times material, Plaintiff was an exemplary employee with no write-ups or disciplinary actions throughout his employment. Indeed, Plaintiff's only performance review had an overall rating of "good."

20.     As the Deputy Program Director for the Behavioral Health Division, Plaintiff's duties and responsibilities included but were not limited to managing the Justice and Mental Health Collaboration Program, final decision making authority over the Justice and Mental Health Collaboration Program training and technical assistant grantees, determining the modification

3

and creation of organizational structures, writing and finalizing all policies and procedures, leading meetings, and assigning deliverable tasks and grantees to staff.

21. Throughout Plaintiff's tenure with Defendant, Defendant subjected Plaintiff to harassment and discrimination based on Plaintiff's race (black) and sexual orientation.

22. For example, at various times throughout Plaintiff's employment, Defendant treated Plaintiff in a lesser and worse manner as compared to Plaintiff's white colleagues by purposely excluding Plaintiff from decision making conversations which were crucial to Plaintiff's duties and responsibilities. Defendant additionally excluded Plaintiff from promotional and professional growth opportunities, which were readily provided to his white colleagues.

23. On or about August 23, 2021, Defendant began discussions with the Behavioral Health Division regarding future restructuring of the division. Plaintiff was present for the meeting.

24. On or about September 20, 2021, the Division Leads presented several options for possible restructuring.  Defendant reviewed the options and claimed they would continue discussing the restructure at the next meeting which was scheduled for November 2021.

25. In or about January 2022, Plaintiff learned that Defendant had already made the final decisions regarding the restructure, and had purposefully excluded Plaintiff from all meetings, emails, and calls concerning the restructuring.

26. Plaintiff was shocked and offended to learn he had been excluded from such meetings and decision making, especially considering Plaintiff's position as the Deputy Program Director.

27. Notably, Plaintiff was the only Black Lead employee and also the only Lead employee to be excluded from the conversation and meetings.

28. In or about January 2022, Plaintiff learned that as part of the restructuring, Plaintiff's roles and responsibilities would be greatly diminished, and Plaintiff would lose all final decision-making

4

authority and would have limited authority over the Program. Therefore, although Plaintiff's title remained the same, Defendant had in effect demoted Plaintiff without cause, notice, or justification.

29.     Notably, Defendant did not demote any of Plaintiff's similarly situated white or non-gay colleagues.

30.     Indeed, Defendant has a history of discriminating against Black employees.

31.     Notably, of the in or around thirty-seven employees in the Behavioral Health Division, there were only approximately twelve are people of color. Of those employees of color, at least three others have experienced and/or complained of discriminatory treatment by Defendant's Senior Management (white female staff).

32.     For example, on or about January 31, 2022, Deputy Division Director, Takeesha White ("Ms. White"), a Black employee, resigned citing racial discrimination. Before resigning, Ms. White warned Plaintiff that Plaintiff's Supervisor, Ms. Delany-Brumsey, agreed with Ms. White that Defendant and Defendant's employees treated Plaintiff differently due to Plaintiff's race as a Black man. Ms. White further stated to Plaintiff Megan Quattlebaum, Director of Defendant, did not believe in racial equity.

33.     On or about February 28, 2022, Plaintiff filed an official complaint with the Human Resources Department Representative, Kenya Salaudeen ("Ms. Salaudeen"), regarding Plaintiff's concerns of harassment and discrimination based on Plaintiff's race and sexual orientation.

34.     Specifically, Plaintiff complained that Defendant's decision-making process was not open, transparent, or inclusive, and that as a Division Lead, Plaintiff should have been included in the decision-making process. Plaintiff further complained of racial discrimination and the inequitable consequences of Defendant's racial discrimination. Plaintiff also noted all other

employees in Plaintiff's position were all white women, and Plaintiff (the only Black Gay Male) was the only employee to have his roles diminished and to suffer an unjustifiable demotion.

35.   Indeed, all of Plaintiff's white female colleagues either received a promotion or remained in their same positions without changes. This included one of Plaintiff's direct reports.

36.   Additionally, Defendant purposely failed to comply with the Human Resources Procedure for internal promotions. Defendant's standard process for promotions requires that direct supervisors submit all promotion offers to Human Resources before any promotions take effect. Defendant purposely disregarded the process and promoted one of Plaintiff's direct reports (a white female) without Plaintiff's approval or input.

37.   In contrast, Defendant did include Sarah Wurzburg ("Ms. Wurzburg") (white female) in the decision-making process for the promotions. Defendant chose to exclude Plaintiff (Black Male) from conversations and decisions regarding his direct report, and instead included Ms. Wurzburg (white female).

38.   Notably, Ms. Wurzburg has also been known by staff to treat Black employees in a discriminatory manner.

39.   On various occasions, Plaintiff, other staff, and external partners have observed and complained about Ms. Wurzburg treating Black employees in a hostile manner, managing Black employees in a harsher manner, and micromanaging Black employees, while treating white employees in a respectful manner.

40.   Further, on various occasions, Ms. Wurzburg has treated Plaintiff in a hostile manner by speaking to Plaintiff in a patronizing and condescending tone.

41.   In or about March 2022, Policy Analyst Laura Fabius ("Ms. Fabius") (Black Female) made

various complaints regarding Ms. Wurzburg including complaints of racial discrimination and a hostile work environment.

42.   Defendant never investigated Ms. Fabius' complaints of racial discrimination. Instead, Defendant terminated Ms. Fabius' employment that same month.

43.   In or about May 2022, Defendant officially notified the office of the restructuring and began the transition.

44.   In or about June 2022, Defendant posted several promotion opportunities within the Behavioral Health Division. Although there were numerous possible promotion opportunities for full time staff, Defendant only genuinely considered two white heterosexual employees for promotions, Charles Francis ("Mr. Francis") and Ethan Aaronson ("Mr. Aaronson").

45.   Notably, Plaintiff had worked for Defendant longer than both Mr. Francis and Mr. Aaronson, managed the largest federal grant portfolio of the division, and had documented success in his work. Nevertheless, Defendant failed to consider Plaintiff as a candidate for promotions.

46.   Ultimately, Defendant promoted Mr. Francis to Deputy Program Director and promoted Mr. to Senior Policy Analyst.

47.   As such, Mr. Francis and Plaintiff then shared equal titles, despite Plaintiff's stronger qualifications, seniority, and extensive experience.

48.   Additionally, Mr. Aaronson was promoted despite widespread uncertainty as to his ability to successfully perform the Senior Policy Analyst role. Specifically, Mr. Aaronson's direct supervisor, and many other employees, believed Mr. Aaronson lacked the qualifications and competencies required for the role.  Nevertheless, Defendant promoted Mr. Aaronson while failing to genuinely consider Plaintiff or any other Black employee.

49.   Concurrently, in the months that followed Plaintiff's complaint of discrimination to Human

Resources, Ms. Wurzburg began retaliating against Plaintiff by treating Plaintiff in an even more hostile and adverse manner, belittling Plaintiff, speaking to Plaintiff in a patronizing tone, and undermining Plaintiff's authority.

50.   For example, in or about June 2022, Ms. Wurzburg began undermining Plaintiff's work, micromanaging Plaintiff, and exercising greater control over Plaintiff's work. In contrast, Ms. Wurzburg did not micromanage or force control over the work of similarly situated white/heterosexual employees.

51.   In the weeks that followed, Ms. Wurzburg continued retaliating against Plaintiff by diminishing Plaintiff's role and scope of responsibilities, undermining Plaintiff's authority by changing already agreed upon plans Plaintiff had created, and by removing Plaintiff from assignments he had previously led without supervision.

52.   Further, Ms. Wurzburg made inappropriate comments to diminish Plaintiff's experience, and purposely excluded Plaintiff from calls, emails, and meetings relevant to Plaintiff's position.

53.   Since filing his internal complaint of discrimination, Defendant additionally removed Plaintiff from the interview and hiring process, not inviting him to sit on any interview panels even when potential new hires would fall under the supervision of Plaintiff. In contrast, Defendant has invited white employees, who would neither supervise nor have any direct contact with potential new hires, to sit on the interview panels.

54.   On or about June 22, 2022, Plaintiff filed a formal complaint with Human Resources complaining of Ms. Wurzburg's discriminatory treatment. In his complaint, Plaintiff requested a meeting with Ms. Delany-Brumsey and Human Resources regarding Ms. Wurzburg's creation of a hostile work environment and discriminatory treatment of Plaintiff based on Plaintiff's race and sexual orientation.

55.     That same day, on or about June 22, 2022, Human Resources replied by "temporarily pausing" Ms. Wurzburg's supervisory authority over Plaintiff.

56.     Notably, the "pause" never took full effect as Ms. Delany-Brumsey allowed and encouraged Ms. Wurzburg to continuously maintain significant supervision and control over Plaintiff's employment.

57.     For example, Ms. Wurzburg had continued to schedule and lead Plaintiff's check-ins. Ms. Delany-Brumsey also had attended the check-ins but offered little input and allows Ms. Wurzburg to maintain supervisor authority over Plaintiff.

58.     On or about July 18, 2022, Plaintiff attended a meeting with Ms. Delany-Brumsey and Human Resources regarding Plaintiff's complaint against Ms. Wurzburg. During the meeting, Human Resources claimed the investigation is ongoing and provided Plaintiff with no meaningful updates.

59.     As nothing changed, despite Human Resources assurances that Ms. Wurzburg would be "temporarily paused" from supervising Plaintiff, Plaintiff made an additional complaint of discrimination on November 18, 2022 and asked Human Resources to make the appropriate accommodations so that he was no longer forced to regularly interact with Ms. Wurzburg. Human Resources did not take any action.

60.     To date, Ms. Wurzburg continues to retaliate against Plaintiff. For example, Defendant continues to hold Federal Grant Lead meetings, however during the meetings Ms. Wurzburg chooses to only discuss the Justice and Mental Health Collaboration Program Training and Technical Assistant portfolio, excluding Plaintiff from other Federal Grant portfolio work. In stark contrast, Ms. Wurzburg regularly includes Plaintiff's white colleagues in Federal Grant portfolio work beyond the specific portfolios they oversee.

61.   Defendant discriminated against Plaintiff on the basis of Plaintiff's race (Black) and sexual
orientation (homosexual) as evidenced by Defendant treating Plaintiff in a worse way as
compared to similarly situated white/heterosexual/female employees, by subjecting Plaintiff
to a hostile work environment wherein Defendant belittled Plaintiff and treated Plaintiff in an
aggressive, hostile, and condescending manner; by Defendant purposely and repeatedly
excluding Plaintiff from decision-making meetings, by diminishing Plaintiff's responsibilities
and authority; by demoting Plaintiff while all other white/heterosexual employees were
promoted or experienced no changes, by denying Plaintiff promotion opportunities, and by
forcing Plaintiff to remain under the supervision of his Harasser.

62.   Plaintiff engaged in protected activities by complaining to Human Resources regarding
Defendant's discriminatory behavior.

63.   Defendant then retaliated against Plaintiff by unjustly limiting and diminishing Plaintiff's job
responsibilities and decision-making authority, further excluding Plaintiff from decision-
making meetings, refusing to include Plaintiff in other Federal Grant program, excluding
Plaintiff from promotion opportunities, forcing Plaintiff to remain under the supervision of his
harasser, and by creating a hostile and adverse work environment wherein Defendant treated
Plaintiff in a hostile, condescending, belittling, and patronizing manner.

64.   To date, Plaintiff continues to be supervised by his Harasser, despite Human Resources' claims
that Ms. Wurzburg would be "temporarily paused" from supervising Plaintiff.

65.   As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized,
embarrassed, traumatized and emotionally distressed.

66.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will
continue to suffer the loss of income, benefits, and other compensation which such

employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

## FIRST CAUSE OF ACTION
## FOR RACE DISCRIMINATION UNDER TITLE VII

67.   Plaintiff repeats and realleges each and every allegation in paragraphs one through sixty-five.

68.   42 U.S.C. § 2000e-2(a)(1), states in part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

69.   As described herein, Defendant, through its employees, engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiff on the basis of his race (Black) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff based on his race.

70.   Defendant, through its Managers, engaged in unlawful employment practices prohibited by Title VII, as described herein.

71.   As a result of Defendant's unlawful discriminatory conduct in violation of the Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

72.   As a result of the unlawful discriminatory conduct of the Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss

of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

73.    The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**SECOND CAUSE OF ACTION**
**FOR SEX DISCRIMINATION UNDER TITLE VII**

74.    Plaintiff repeats and realleges each and every allegation in paragraphs one through seventy-two.

75.    42 U.S.C. § 2000e-2(a)(1), states in part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

76.    As described herein, Defendant, through its employees, engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiff on the basis of his sexual orientation (homosexual) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff.

77.    Defendant, through its Managers, engaged in unlawful employment practices prohibited by Title VII, as described herein.

78.    As a result of Defendant's unlawful discriminatory conduct in violation of the Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

79. As a result of the unlawful discriminatory conduct of the Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

80. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

### THIRD CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII

81. Plaintiff repeats and realleges each and every allegation in paragraphs one through seventy-nine.

82. 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

83. As described herein, Plaintiff engaged in protected activities by complaining to Human Resources regarding Defendant's discrimination.

84. Defendant then retaliated against Plaintiff by creating a hostile and adverse work environment wherein Defendant treated Plaintiff in a hostile, condescending, belittling, and patronizing manner; by unjustly limiting and diminishing Plaintiff's job responsibilities and decision-making authority, by excluding Plaintiff from decision-making meetings, by refusing to discuss Plaintiff's programs, by excluding Plaintiff from promotion opportunities, and by forcing Plaintiff to remain under the supervision of his harasser despite multiple documented

complaints of discrimination against the harasser.

85.   Defendant would not have retaliated against Plaintiff but for Plaintiff's objections and complaints of harassment and discrimination.

86.   Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

87.   As a result of Defendant's unlawful conduct in violation of the Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

88.   As a result of the unlawful conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

89.   The unlawful discriminatory actions of Defendant constitutes malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**FOR RACE DISCRIMINATION UNDER SECTION 1981**

90.   Plaintiff repeats and realleges each and every allegation in paragraphs one through eighty-eight.

91.   42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in  every State and Territory to make and enforce contracts, to sue, be parties, give  evidence, and to the full and equal benefit of all laws and proceedings for the security  of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

92.    As described herein, Defendant, through its employees, engaged in unlawful employment practices prohibited by Section 1981, by discriminating against Plaintiff on the basis of his race (Black) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff based on his race.

93.    Defendant, through its Managers,  engaged in unlawful employment practices prohibited by Section 1981, as described herein.

94.    As a result of Defendant's unlawful discriminatory conduct in violation of the Section 1981, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

95.    As a result of the unlawful discriminatory conduct of the Defendant in violation of Section 1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

96.    The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER SECTION 1981

97.    Plaintiff repeats and realleges each and every allegation in paragraphs one through ninety-five.

98.    Though the plain language of § 1981 does not specifically reference retaliation, the view that

15

§ 1981 "encompasses retaliation claims is indeed well-embedded in the law." see CBOCS West Inc. v. Humphries, 553 U.S. 442, 128 S.Ct. 1951, 1957–58, 170 L.Ed.2d 864 (2008) [holding that Section 1981 of the Civil Rights Act of 1866 unequivocally includes claims of retaliation by those pursuing race and color claims under the statute.]

99.   As described herein, Plaintiff engaged in protected activities by complaining to Human Resources regarding Defendant's discrimination.

100.  Defendant then retaliated against Plaintiff by creating a hostile and adverse work environment wherein Defendant treated Plaintiff in a hostile, condescending, belittling, and patronizing manner; by unjustly limiting and diminishing Plaintiff's job responsibilities and decision-making authority, by excluding Plaintiff from decision-making meetings, by refusing to discuss Plaintiff's programs, by excluding Plaintiff from promotion opportunities, and by forcing Plaintiff to remain under the supervision of his harasser despite multiple documented complaints of discrimination against the harasser.

101.  Defendant would not have retaliated against Plaintiff but for Plaintiff's objections and complaints of harassment and discrimination.

102.  Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

103.  As a result of Defendant's retaliatory conduct in violation of  Section 1981, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

104.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damage.

### SIXTH CAUSE OF ACTION
### FOR RACE DISCRIMINATION UNDER THE NYSHRL

105.    Plaintiff repeats and realleges each and every allegation in paragraphs one through one hundred-three.

106.    New York State Executive Law §296(1)(a) provides that

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. (Emphasis added)

107.    As described herein, Defendant, through its employees, engaged in unlawful employment practices prohibited by NYSHRL, by discriminating against Plaintiff on the basis of his race (Black) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff based on his race.

108.    Defendant, through its Managers,  engaged in unlawful employment practices prohibited by NYSHRL, as described herein.

109.    As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

110.    As a result of the unlawful discriminatory conduct of the Defendant's in violation of NYSHRL,

Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

111.   The unlawful discriminatory actions of Defendant's constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SEVENTH CAUSE OF ACTION
## FOR SEX DISCRIMINATION UNDER THE NYSHRL

112.   Plaintiff repeats and realleges each and every allegation in paragraphs one through one hundred-ten.

113.   New York State Executive Law §296(1)(a) provides that

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

114.   As described herein, Defendant, through its employees, engaged in unlawful employment practices prohibited by NYSHRL, by discriminating against Plaintiff on the basis of his sexual orientation (homosexual) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff.

115.   Defendant, through its Managers, engaged in unlawful employment practices prohibited by NYSHRL, as described herein.

116. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

117. As a result of the unlawful discriminatory conduct of the Defendant's in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

118. The unlawful discriminatory actions of Defendant's constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYSHRL

119. Plaintiff repeats and realleges each and every allegation in paragraphs one through one hundred-seventeen.

120. Executive Law § 296 provides that:

> "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

121. As described herein, Plaintiff engaged in protected activities by complaining to Human Resources regarding Defendant's discrimination.

122. Defendant then retaliated against Plaintiff by creating a hostile and adverse work environment wherein Defendant treated Plaintiff in a hostile, condescending, belittling, and patronizing manner; by unjustly limiting and diminishing Plaintiff's job responsibilities and decision-

making authority, by excluding Plaintiff from decision-making meetings, by refusing to discuss Plaintiff's programs, by excluding Plaintiff from promotion opportunities, and by forcing Plaintiff to remain under the supervision of his harasser despite multiple documented complaints of discrimination against the harasser.

123. Defendant would not have retaliated against Plaintiff but for Plaintiff's objections and complaints of harassment and discrimination.

124. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

125. As a result of Defendant's unlawful conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

126. As a result of the unlawful conduct of the Defendant's in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

127. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**NINTH CAUSE OF ACTION**
**FOR RACE DISCRIMINATION UNDER THE NYCHRL**

128. Plaintiff repeats and realleges each and every allegation in paragraphs one through one hundred twenty-six.

129. New York City Administrative Code §8-107(1) provides that it shall be an unlawful

discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

130. As described herein, Defendant, through its employees, engaged in unlawful employment practices prohibited by NYCHRL, by discriminating against Plaintiff on the basis of his race (Black) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff based on his race.

131. Defendant, through its Managers, engaged in unlawful employment practices prohibited by NYCHRL, as described herein.

132. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

133. As a result of the unlawful discriminatory conduct of the Defendant's in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

134. The unlawful discriminatory actions of Defendant's constitute malicious, willful, and wanton violations of NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## TENTH CAUSE OF ACTION
## FOR SEX DISCRIMINATION UNDER THE NYCHRL

135.   Plaintiff repeats and realleges each and every allegation in paragraphs one through one hundred thirty-three.

136.   New York City Administrative Code §8-107(1) provides that it shall be an unlawful discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

137.   As described herein, Defendant, through its employees, engaged in unlawful employment practices prohibited by NYCHRL, by discriminating against Plaintiff on the basis of his sexual orientation (homosexual) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff.

138.   Defendant, through its Managers, engaged in unlawful employment practices prohibited by NYCHRL as described herein.

139.   As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

140.   As a result of the unlawful discriminatory conduct of the Defendant's in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is

entitled to an award of monetary damages and other relief.

141. The unlawful discriminatory actions of Defendant's constitute malicious, willful, and wanton violations of NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## ELEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYCHRL

142. Plaintiff repeats and realleges each and every allegation in paragraphs one through one hundred-forty.

143. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter…"

144. As described herein, Plaintiff engaged in protected activities by complaining to Human Resources regarding Defendant's discrimination.

145. Defendant then retaliated against Plaintiff by creating a hostile and adverse work environment wherein Defendant treated Plaintiff in a hostile, condescending, belittling, and patronizing manner; by unjustly limiting and diminishing Plaintiff's job responsibilities and decision-making authority, by excluding Plaintiff from decision-making meetings, by refusing to discuss Plaintiff's programs, by excluding Plaintiff from promotion opportunities, and by forcing Plaintiff to remain under the supervision of his harasser despite multiple documented complaints of discrimination against the harasser.

146. Defendant would not have retaliated against Plaintiff but for Plaintiff's objections and complaints of harassment and discrimination.

147. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

148. As a result of Defendant's unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

149. As a result of the unlawful conduct of Defendant in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

150. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## **JURY DEMAND**

151. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, Section 1981, NYSHRL, and NYCHRL in that Defendant discriminated against Plaintiff on the basis of race and sexual orientation, and created and maintained a hostile work environment;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

Case 1:23-cv-00084   Document 1   Filed 01/05/23   Page 25 of 25

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the

prosecution of the action; and

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendant's unlawful employment practices.

Dated: Garden City, New York
       January 5, 2023

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:     _____/s/_____
        Marjorie Mesidor, Esq.
        585 Stewart Avenue, Suite 410
        Garden City, New York 11530
        T: (212) 248-7431
        F: (212) 901-2107

**THE WASHINGTON LAW FIRM,
PLLC**

By:     _____/s/_____
        Melissa Washington
        *Attorneys for Plaintiff*
        260 Madison Ave, 8th Floor
        New York, New York 10016
        T: (646) 823-1655
        F: (646) 400-0614